IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br>v.<br><br>BON SECOURS MERCY HEALTH, INC. and MERCY HEALTH PHYSICIANS YOUNGSTOWN, LLC,<br><br>Defendants. | ) | CIVIL ACTION NO. 1:26-CV-2500<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and provide appropriate relief to Charging Party Dr. Ian Walton ("Charging Party"). As alleged with greater particularity below, Defendants engaged in unlawful employment practices when they discharged Charging Party and otherwise discriminated against him with respect to his terms, conditions, and/or privileges of employment because of religion and/or race.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 452, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Employment practices alleged to be unlawful were committed within the

jurisdiction of the United States District Court for the Northern District of Ohio and they continue to adversely affect Charging Party, who lives in Geauga County.

3. As set forth below, Charging Party filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("the EEOC") in Cleveland, Ohio. The EEOC's Cleveland Field Office conducted the administrative process concerning the charge, as described below, including gathering documents and information, which are located and maintained in Cleveland, Ohio.

PARTIES

4. Plaintiff, the United States Equal Employment Opportunity Commission ("the EEOC" or "the Commission"), is the federal agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. At all relevant times, Defendant Bon Secours Mercy Health, Inc. ("BSMH") has continuously done business in Ohio, including in Lorain County, and employed at least 15 persons.

6. At all relevant times, Defendant BSMH has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

7. BSMH operates the Mercy Health healthcare system, which serves Ohio and Kentucky, including, but not limited to, a region that serves Lorain County.

8. Defendant Mercy Health Physicians Youngstown, LLC ("MHPY") is an Ohio corporation which has operated using the trade or fictitious name Mercy Health – Howland Orthopaedics and Sports Medicine. At all relevant times, MHPY has been a subsidiary of BSMH and part of the Mercy Health healthcare system described above.

9. At all relevant times, MHPY has continuously done business in Ohio as a subsidiary of BSMH and has continuously had at least 15 employees.

10. At all relevant times, Defendant MHPY has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

11. At all relevant times, Defendant BSMH employed personnel, including officers, directors, and other staff who exercised and/or maintained control over MHPY, including, but not limited to, in the management of medical practice personnel.

12. At all relevant times, Defendants have had sufficient interrelation of operations, common management, centralized control of labor relations and personnel, and/or common ownership and financial control such that they are a single employer for purposes of Title VII.

13. At all relevant times, BSMH has maintained sufficient control over MHPY such that it constitutes a joint employer of MHPY and its employees.

## ADMINISTRATIVE PROCEDURES

14. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge of discrimination with the EEOC's Cleveland Field Office regarding alleged violations of Title VII by Defendants.

15. On February 27, 2026, the EEOC issued Defendants a Determination finding reasonable cause to believe that they violated Title VII and invited them to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

16. After issuing its Determination, the EEOC engaged in communications with Defendants to provide them the opportunity to remedy the unlawful discriminatory practices

described in the Determination.

17. The EEOC was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

18. On April 3, 2026, the EEOC issued to Defendants a Notice of Failure of Conciliation.

19. All conditions precedent to the initiation of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

20. Charging Party began his employment with Defendants in August 2016, working as an orthopedic surgeon at facilities owned and operated by them in Northeast Ohio.

21. Charging Party is ethnically and religiously Jewish.

22. Charging Party is an accomplished orthopedic surgeon as evidenced, in part, by his education, licensure/certification, experience, and achievements, including, but not limited to, completing an orthopedic surgery residency in 2015; having specialized training in various types of orthopedic surgeries; completing a post-residency orthopedic sports medicine fellowship in 2016; obtaining board certification in Orthopedic Surgery from the American Osteopathic Board of Orthopedic Surgery in 2020; and having developed, acquired, and maintained skill sets, patient care experience, and outcomes consistent with demonstrable excellence in the position.

23. Charging Party was well qualified for the orthopedic surgeon position he held with Defendants. After hiring him, Defendants described Charging Party as offering expert diagnosis, treatment, and rehabilitation for patients with bone, joint, or connective tissue disorders. Defendants maintain on their website a post highlighting Charging Party as an orthopedic surgeon whose performance as a Mercy Health provider led to a patient's road to recovery and describing him and two other Mercy Health team members as "nothing but phenomenal."

24. Throughout Charging Party's employment with Defendants, he developed and maintained a successful practice as an orthopedic surgeon and performed his job exceedingly well, including exceeding Defendants' productivity goals.

25. Defendants maintained a Corrective Action Policy that applies to all employees and calls for progressive, documented, disciplinary action where an employee's performance needs improvement. Defendants issued no contemporaneous documentation to Charging Party advising that his performance needed improvement, nor did they otherwise advise him of the need to improve any aspect of his job performance.

26. During Charging Party's employment with Defendants, it was known among management and other staff that he is Jewish. Workplace discussions about Charging Party's Jewish identity, Jewish traditions and religious holidays, and/or other matters concerning Charging Party's Jewish ethnicity and religion, were not uncommon. That Charging Party is Jewish was discussed, commented upon, and/or inquired about by various personnel. Additionally, Charging Party proudly displayed photos in the workplace of his family wearing traditional Jewish attire, including yarmulkes and tallit, and engaging in Jewish religious ceremony, and managers, staff, and other personnel saw them and/or commented on them periodically.

27. Throughout Charging Party's employment with Defendants, Charging Party was regularly subjected to antisemitic remarks and hostility. Such conduct included, but was not limited to, saying that Jewish people are to blame for various conflicts; singling out Charging Party as if he were responsible for defending conflict involving Israel and suggesting that, because he is Jewish, he would know why Jewish people allegedly cannot make peace with their neighbors; suggesting that Charging Party, his views or opinions, and/or contributions he made to discussions or activities were clouded or colored, in a negative way, by his Jewish ethnicity; discussing and

highlighting Charging Party's Jewish ethnicity in a negative light, such as when blaming Jewish people for provoking or sustaining conflict; and otherwise expressing dislike, disdain, or disrespect for Jewish people, Jewish ethnicity, and/or Jewish religious traditions.

28. During his employment with Defendants, Charging Party also was subjected to unfavorable terms and conditions of employment because he is Jewish, including, but not limited to, terms and conditions that non-Jewish physicians were not subjected to and that interfered with Charging Party's development and maintenance of his medical practice.

29. Notwithstanding the antisemitic remarks and hostility and the unfavorable terms and conditions of employment, Charging Party continued to provide excellent medical care and exceed Defendants' productivity goals. He complied with management directives, supported the practice, and successfully carried out his obligations to patients and the broader medical practice.

30. On October 7, 2023, Hamas launched an attack on Israel. After the attack, Charging Party's work environment was flooded with disparaging comments including, but not limited to, criticizing what "the Jews" were doing in Gaza; depicting or describing the attack as the fault of "the Jews;" saying people should not care or be disturbed about Israelis who had been taken hostage; confronting Charging Party, in that context, about whether he is a practicing Jew and inquiring whether he had any part in the war; and making other antisemitic and hostile remarks about Jewish persons and Israelis.

31. During the same timeframe, Defendants excluded Charging Party from one or more meetings to coordinate surgery schedules and reduced his block times available to perform surgery, without his input and agreement, in a manner which adversely affected the terms, conditions, and/or privileges of his employment.

32. On November 1, 2023, Defendants notified Charging Party that his employment

was being terminated. Defendants gave him no reason for the termination, saying only that it was for a reason "other than work performance." Defendants advised Charging Party he should continue to work for them as an orthopedic surgeon, without interruption, until the end of January, 2024, when his employment would end.

33. After he was advised of the termination, Charging Party asked management multiple times why he had been terminated; management responded repeatedly that there was "no reason."

34. At the time of Defendants' notice of Charging Party's discharge, and continuing thereafter, Defendants had a continuing need for an orthopedic physician to provide medical care that Charging Party had been providing, and Defendants sought to hire an orthopedic physician with Charging Party's qualifications, replaced Charging Party with a non-Jewish orthopedic physician, and/or distributed Charging Party's patients and other job functions to one or more non-Jewish physicians.

COUNT I

(Title VII: Race Discrimination)

35. The EEOC hereby repeats and incorporates by reference the allegations in paragraphs 1-34.

36. Defendants engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by discriminating against Charging Party with respect to his terms, conditions, and/or privileges of employment and discharging him because of race (Jewish).

37. The unlawful employment practices complained of were intentional.

38. The unlawful employment practices were done with malice or with reckless

indifference to Charging Party's federally protected rights.

39. The effect of the practices complained of in the foregoing paragraphs has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee because of race.

COUNT II

(Title VII: Religious Discrimination)

40. The EEOC hereby repeats and incorporates by reference the allegations in paragraphs 1-34.

41. Defendants engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by discriminating against Charging Party with respect to his terms, conditions, and/or privileges of employment and discharging him because of religion (Jewish).

42. The unlawful employment practices complained of were intentional.

43. The unlawful employment practices complained of were done with malice or with reckless indifference to Charging Party's federally protected rights.

44. The effect of the practices complained of in the foregoing paragraphs has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee because of religion.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from engaging in any employment practices that discriminate because of race.

B. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from engaging in any employment practices that discriminate because of religion.

C. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities to Jewish employees and that eradicate the effects of Defendants' past and present unlawful employment practices.

D. Order Defendants to make Charging Party whole by providing backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful practices, including, but not limited to, front pay.

E. Order Defendants to make Charging Party whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

F. Order Defendants to make Charging Party whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, embarrassment, frustration, and humiliation, in amounts to be determined at trial.

G. Order Defendants to pay Charging Party punitive damages for Defendants' malicious and reckless conduct described above, in amounts to be determined at trial.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

I. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507

Christopher Lage
Deputy General Counsel

s/ Debra M. Lawrence
Debra M. Lawrence
Regional Attorney

s/ Kate Northrup
Kate Northrup
Assistant Regional Attorney

s/ Jessi Isenhart
Jessi Isenhart
Trial Attorney
U.S. EEOC – Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
jessi.isenhart@eeoc.gov
Telephone: 216-306-1121

Dated: September 23, 2026